UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YORMAN RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03065-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Yorman Rodriguez's petition for a writ of habeas corpus. Dkt. No. 4. For the reasons stated below, the Court grants the petition in part and denies it in part.[1]

## I. INTRODUCTION

Rodriguez is a citizen and native of Venezuela. Dkt. No. 8 at 1. U.S. Border Patrol encountered him near Eagle Pass, Texas with his partner and minor child on November 27, 2023. *Id.* On November 30, 2023, Border Patrol served him a Notice to Appear charging him as removable under Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) "as an alien present in the United States without being admitted or paroled or

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

who has arrived in the United States at any time or place not designated by the Attorney General." *Id.* at 2. On December 1, 2023, Border Patrol released Rodriguez on an Order of Release on Recognizance ("OREC"). *Id.* On June 28, 2026, U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") "encountered and apprehended [Rodriguez] during a lead development" in Portland, Oregon; he was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington the same day and has been detained there since. *Id.* The form I-213 documenting Rodriguez's June 28 arrest states that he "violated his release agreement," Dkt. No. 9-6 at 3, but Respondents[2] concede that there "is no evidence presently available documenting [Rodriguez's] violations of conditions or OREC revocation." Dkt. No. 7 at 4. Rodriguez avers that he "complied with all directives" related to his OREC and requests that Respondents produce documentation showing any alleged violations. Dkt. No. 4 at 12, 14. He further avers that Respondents did not provide him "an opportunity to rebut" any allegations of violations or to obtain an attorney. *Id.* at 29.

On July 2, 2026, Rodriguez purportedly requested voluntary departure during deportation procedures at the Tacoma Immigration Court. Dkt. No. 8 at 2. He avers that he "accepted voluntary departure without knowing what it meant" and later, when he realized what it meant, he "timely appealed" to the Board of Immigration Appeals ("BIA") requesting remand so he can pursue an asylum claim. Dkt. No. 4 at 30. Respondents confirm that "BIA records checks show that [Rodriguez]'s appeal is currently pending [at the] BIA." Dkt. No. 8 at 3.

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

On September 1, 2026, Rodriguez filed a pro se petition for writ of habeas corpus. Dkt. No. 4. On September 15, 2026, Respondents filed a return. Dkt. No. 7.

## II. DISCUSSION

Rodriguez contends that the government violated his due process rights by arbitrarily re-detaining him when he did not violate any conditions of his OREC. Dkt. No. 4 at 8. He contends the government violated its own regulations when he was detained "without notice and explanation" and "without an opportunity to contest the basis for [his] re-detention." *Id.* at 10–11. He claims Respondents have still not provided him with any revocation notice. *Id.* at 11. He also argues that removal is not reasonably foreseeable in the near future and is therefore impermissible. *Id.* at 15–17 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Rodriguez requests (1) immediate release under the same conditions previously imposed, (2) injunctive relief preventing Respondents from re-detaining him without providing him a "pre-deprivation hearing before a neutral party" and from imposing restrictive conditions of release such as location monitoring, (3) the return all of his property including his identification document and work permit, (4) "repatriation to a public place in St. Helens, Oregon," and (5) damages totaling $26,000 because he "was the sole bread winner" and his "family has become destitute since [his] arbitrary detention." *Id.* at 25.

Perhaps recognizing that this Court has recently and repeatedly found similar procedurally deficient revocations of ORECs to constitute violations of other noncitizens' due process rights,[3] Respondents do not seriously contest Rodriguez's petition. Instead, they maintain that his detention is mandatory under 8 U.S.C. § 1225(b). Dkt. No. 7 at 2, 5–6. While admitting that they do "not possess evidence" regarding the cancellation of Rodriguez's OREC and the revocation of

[3] *See, e.g.*, *Obregon Ante v. Lyons*, No. 2:26-CV-02464-LK, 2026 WL 2516888 (W.D. Wash. Aug. 26, 2026); *R.J.S.V. v. Hernandez*, No. 2:26-CV-02148-LK, 2026 WL 2085854 (W.D. Wash. July 20, 2026); *Najeras Najeras v. Hernandez*, No. 2:26-CV-01166-LK, 2026 WL 2509569 (W.D. Wash. May 14, 2026).

his release, Respondents nevertheless seek to hold Rodriguez "to his burden of demonstrating by a preponderance of the evidence that the re-detention violated his due process rights." Dkt. No. 7 at 6.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687. "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S.

510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Rodriguez Has Established a Due Process Violation**

As mentioned above, Respondents assert that Rodriguez is detained under 8 U.S.C. § 1225(b). Dkt. No. 7 at 2, 5–6. Rodriguez contends he was apprehended and released pursuant to 8 U.S.C. § 1226. Dkt. No. 4 at 7. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. <u>Process Required by the Statute</u>

a. *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

8 U.S.C. § 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

As the Ninth Circuit recently held, "[noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026); *see also Guerrero Orellana v. Moniz*, No. 25-2152, 2026 WL 2352042 (1st Cir. Aug. 13, 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, No. 25-7044, 2026 WL 2661092 (4th Cir. Sept. 10, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). "The implication of the government's position is that Congress in 1996 made a major change to the immigration laws by subjecting millions of unadmitted [noncitizens] present in the United States to mandatory detention, but that this change then went unnoticed and unheeded, with the Executive Branch for the next three decades violating Congress's assertedly unambiguous mandatory detention directive by treating these [noncitizens] as subject to release on bond." *Rodriguez Vazquez*, 183 F.4th at 1164. But "the text, context, and structure of the INA, considered as a whole, did not direct such a significant, yet overlooked, change in the law." *Id.* Moreover, under Respondents' interpretation, "Congress's recent handiwork in the Laken Riley Act," which carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority, "would be rendered superfluous, because those aliens subject to § 1226(c)(1)(E) would already be subject to mandatory detention under § 1225(b)(2)(A), as inadmissible aliens present in the United States." *Id.* at 1185.

Consistent with the Ninth Circuit's interpretation of the governing statutory scheme, the government has treated Rodriguez as subject to discretionary detention under 8 U.S.C. § 1226 from the time he was released on an OREC until his arrest. *See* Dkt. No. 9-4 at 2 (OREC stating

"you are being released" in "accordance with section 236 of the INA," *i.e.*, 8 U.S.C. § 1226); Dkt. No. 9-5 (Notice of Custody Determination stating the same); *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited September 21, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "[p]ursuant to section 236(a) of the INA"). Furthermore, the NTA issued to Rodriguez in November 2023 categorized him as a noncitizen "present in the United States who has not been admitted or paroled"—not as "an arriving alien." Dkt. No. 9-3 at 2. Nothing in the record prior to his arrest suggests that his release was pursuant to Section 1225(b). These facts demonstrate that his detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225. *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) ("[W]here a petitioner has been 'treated by [the federal government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025))).

Rodriguez argues that he was "re-detained in violation of" ICE's "own regulations and without due process." Dkt. No. 4 at 8. The Court agrees. Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

b. *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also*

*Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R.

§ 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. Due Process Requirements

Rodriguez contends that Respondents' failure to comply with their own regulations when re-detaining him violated his right to due process. Dkt. No. 4 at 8–14, *see also id.* at 18–23 (arguing that his due process rights were violated under framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Although Respondents assert that they are not "conceding the issue," they do so in all relevant respects, admitting that there is no evidence that Rodriguez received *any* process whatsoever "associated with the cancellation of [his] OREC and revocation of [his] release." Dkt. No. 7 at 6.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

a. *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part

of our population”). Put another way, “[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]” *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Rodriguez in December 2023, DHS released him on his own recognizance. Until he was re-detained in June 2026, Rodriguez has spent nearly all of his time in the United States released on the OREC and obtained authorization to work in the United States. Dkt. No. 4 at 12, 29; Dkt. No. 8 at 2. He worked as a food delivery driver to support his young child. Dkt. No. 4 at 30. He avers that he found “protection and welcome” in the United States and that he “establish[ed] connections in reasonable reliance on [his] continued freedom.” *Id.* at 19, 28. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

b. *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect a petitioner’s liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews’* three-part test applies in “the immigration detention context,” 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Rodriguez has an interest in remaining out of immigration detention. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Despite his liberty interest being “indeterminate” under an OREC, that interest “includes many of the core

values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Rodriguez has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing upon request. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Rodriguez.

Turning to the second factor, Respondents purported to detain Rodriguez under 8 U.S.C. § 1225(b), stripping him of his right to a bond hearing. *See* Dkt. No. 7 at 2, 5–6. Furthermore, Respondents concede that there is no evidence that Rodriguez was provided any process whatsoever, let alone the process required by regulation. *Id.* at 6. The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

The additional procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Rodriguez's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Rodriguez could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [the petitioner] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding

the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). Particularly because Respondents concede that there is no evidence that they provided Rodriguez with any process at all, this factor clearly weighs in favor of Rodriguez.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Rodriguez.

Under *Mathews*, the Court finds that the Respondents failed to provide Rodriguez with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful. *See Truong v. Noem*, No. 25-CV-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.").[4]

**C. Injunctive Relief**

Rodriguez requests that the Court order his "repatriation to a public place in St. Helens, Oregon." Dkt. No. 4 at 25. Respondents do not respond to this request. *See generally* Dkt. No. 7. Under these circumstances, the Court finds that it is appropriate to restore Rodriguez to his status before his unlawful detention occurred, and therefore orders that the Government facilitate Rodriguez's return to St. Helens, Oregon. *See, e.g.*, *Abdikarim v. Scott*, No. C26-2731-KKE, 2026

[4] Because the Court reaches this conclusion, it need not address Rodriguez's additional argument that his detention has become prolonged and excessive. Dkt. No. 4 at 15–17.

WL 2409268, at *4 (W.D. Wash. Aug. 18, 2026) (ordering the government to return petitioner to Minnesota, where he was originally arrested and detained before being transferred to NWIPC); *Josue I.C.A. v. Lyons*, No. 1:25-cv-01542-SKO (HC), 2025 WL 3496432, at *2, 6 (E.D. Cal. Dec. 5, 2025) (ordering the government to return petitioner to Maryland, where he was originally arrested and detained before being transferred to a California facility).

In addition to release, Rodriguez requests injunctive relief preventing "the government from re-detaining [him] before giving [him] a pre-deprivation hearing before a neutral party." Dkt. No. 4 at 25. Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941-42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Nowhere in Rodriguez's petition does he allege that re-detention is likely if he were to be released or that such detention is likely to occur without compliance with the government's regulations or policies. Without argument or evidence that those outcomes are likely to occur, Rodriguez's request constitutes nothing more than a "mere possibility" of harm that do not entitle him to relief. *Id*. For these reasons, the Court denies his request for injunctive relief regarding potential future re-detention.

**D. Damages**

Rodriguez requests damages to compensate him for the time he could not work while detained. Dkt. No. 4 at 25. Because damages are not cognizable in a habeas petition, the Court

denies this request. *Preiser*, 411 U.S. at 494 ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy.").

## III. CONCLUSION

For the foregoing reasons, Rodriguez's petition for a writ of habeas corpus, Dkt. No. 4, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents shall release Rodriguez from custody within 24 hours on the terms of his most recent OREC or other terms consistent with Section 1226(a) and shall return to Rodriguez any personal property not required to be retained by Respondents by law;
2. Respondents shall facilitate Rodriguez's prompt return to St. Helens, Oregon;
3. Respondents shall file a Status Report by September 22, 2026, confirming that Rodriguez has been released and arrangements have been made for his return to St. Helens, Oregon.

Dated this 21st day of September, 2026.

Lauren King
Lauren King
United States District Judge